Slip Op. 09-97

UNITED STATES COURT OF INTERNATIONAL TRADE

VINH QUANG FISHERIES CORPORATION,

                Plaintiff,

      v.

UNITED STATES,

                Defendant.

Before: Leo M. Gordon, Judge

Court No. 08-00233

**OPINION**

[Commerce's new shipper review results sustained; judgment for Defendant.]

Dated: September 14, 2009

    Trade Pacific PLLC (Robert G. Gosselink, Jonathan M. Freed, Ji Hyun Tak) for Plaintiff Vinh Quang Fisheries Corporation.

    Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, Franklin E. White, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Richard P. Schroeder, Trial Attorney; and Office of the Chief Counsel for Import Administration, U.S. Department of Commerce (David W. Richardson), of counsel, for Defendant United States.

    Akin Gump Strauss Hauer & Feld LLP (Valerie A. Slater, J. David Park, Jarrod M. Goldfeder, Christopher D. Priddy, Natalya D. Dobrowolsky) for Defendant-Intervenors Catfish Farmers of America, America's Catch, Consolidated Catfish Companies, LLC dba Country Select Fish, Delta Pride Catfish Inc., Harvest Select Catfish Inc., Heartland Catfish Company, Pride of the Pond, Simmons Farm Raised Catfish, Inc., and Southern Pride Catfish Company, LLC.

    Gordon, Judge:  This action involves the final results of a new shipper review on the antidumping order on frozen fish fillets from Vietnam.  Certain Frozen Fish Fillets from the Socialist Republic of Vietnam, 73 Fed. Reg. 36,840 (Dep't of Commerce June 30, 2008) (final results and partial rescission new shipper review) ("Final Results"); see also Issues and Decision Memorandum for Certain Frozen Fish Fillets from the

Court No. 08-00233                                                                                                    Page 2

Socialist Republic of Vietnam, A-552-801 (June 20, 2008), available at http://ia.ita.doc.gov/frn/summary/vietnam/E8-14801-1.pdf ("Decision Memorandum") (last visited Sept. 14, 2009). Before the court is Plaintiff's USCIT Rule 56.2 motion for judgment on the agency record challenging a determination made by the U.S. Department of Commerce ("Commerce") to value unprocessed fish waste using price quotes rather than the processed fish waste values proffered by Vinh Quang Fisheries Corp. ("Vinh Quang"). The court has jurisdiction pursuant to Section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2006),[1] and 28 U.S.C. § 1581(c) (2006). For the reasons set forth below, the court denies Plaintiff's motion and sustains the Final Results.

## I. Background

Vietnam is a non-market economy country. During the new shipper review, Vinh Quang reported in its factors of production database fish waste as an offset to production costs. Vinh Quang Section D Questionnaire Response at D-14, Pub. Doc. 35 ("Pl. Sec. D Resp.").[2] Subsequently, Vinh Quang indicated that, during the period of review, fish waste was collected at each stage of production and stored in a designated room. Vinh Quang Supplemental Questionnaire Response at 16 (July 31, 2007), Pub. Doc. 61 ("Pl. July 2007 Supp. Resp."). Vinh Quang represented that "the fish waste is sold without further processing." Pl. July 2007 Supp. Resp. at 16.

---

[1] Further citations to the Tariff Act of 1930 are to the relevant provisions of Title 19 of the U.S. Code, 2006 edition.

[2] Documents in the administrative record are identified as "Pub. Doc." (for a public document), followed by the document number.

Vinh Quang also reported that it did not segregate the fish waste into separate by-products, such as fish skin, stomachs, or broken fillets. Vinh Quang Supplemental Response at II-25 (Oct. 10, 2007), Pub. Doc. 97 ("Pl. Oct. 2007 Supp. Resp.").

Vinh Quang proposed that Commerce value fish waste as an average of the UN Comtrade data for Bangladeshi import prices of fish skin under HTS subheading 2301.20, and the World Trade Atlas ("WTA") data for Indonesian import prices for broken meat under HTS subheading 0304.90.90. Decision Memorandum at 6; Vinh Quang Surrogate Value Submission Attach. 2, Pub. Doc. 151 ("Pl. Surr. Val. Subm."). Catfish Farmers, the domestic interested party in the review,[3] submitted surrogate value information for unprocessed fish waste in the form of two price quotes from Indian seafood processing companies. Catfish Farmers Surrogate Value Submission at 13 & Ex. 16, Pub. Doc. 73 ("Catfish Farmers Surr. Val. Subm."). Catfish Farmers explained that it was unable to obtain public prices for unprocessed fish waste because that item is not widely traded in commercial markets. Catfish Farmers Surr. Val. Subm. at 13 & Ex. 16. For the preliminary results, Commerce valued Vinh Quang's unprocessed fish waste, bone, and head, using the price quotes submitted by Catfish Farmers. See Certain Frozen Fish Fillets From the Socialist Republic of Vietnam, 73 Fed. Reg. 6119 (Dep't of Commerce Feb. 1, 2008) (partial rescission and

---

[3] The defendant-intervenors in this action are Catfish Farmers of America, America's Catch, Consolidated Catfish Companies, LLC dba Country Select Fish, Delta Pride Catfish Inc., Harvest Select Catfish Inc., Heartland Catfish Company, Pride of the Pond, Simmons Farm Raised Catfish, Inc., and Southern Pride Catfish Company, LLC. They are collectively referred to as "Catfish Farmers."

preliminary results) ("Preliminary Results"); Analysis for Vinh Quang at 4, Pub. Doc. 146 & Preliminary Results Surr. Val. Mem. at 7, Pub. Doc. 130.

In response to the Preliminary Results Vinh Quang argued that Commerce should use the values it submitted for fish skin and broken meat to value fish waste. Vinh Quang Administrative Case Brief at 5, Pub. Doc. 154 ("Pl. Admin. Case Br."). Vinh Quang contended that the Indian price quotes were self-serving, not public, not independently audited, not verifiable, and not representative of industry-wide values. Pl. Admin. Case Br. at 8, 10. Catfish Farmers argued that the Indian price quotes were the best available and only information on the record to value unprocessed fish waste. Catfish Farmers Administrative Rebuttal Brief at 16-17, Pub. Doc. 164 ("Catfish Farmers Admin. Rebuttal Br."). Catfish Farmers asserted that the values proposed by Vinh Quang were inappropriate because they were for processed fish waste and did not match the factor of production at issue. See Catfish Farmers Admin. Rebuttal Br. at 16-19.

In the Final Results Commerce selected the Indian price quotes for unprocessed fish waste to value the unprocessed fish waste factor of production. Decision Memorandum at 7-8. Vinh Quang challenges that decision in this action.

## II. Standard of Review

For new shipper reviews of antidumping duty orders, the court sustains Commerce's determinations, findings, or conclusions unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). More specifically, when reviewing substantial evidence challenges

to Commerce's actions, the court assesses whether the agency action is "unreasonable" given the record as a whole. <u>Nippon Steel Corp. v. United States</u>, 458 F.3d 1345, 1350-51 (Fed. Cir. 2006); <u>see also</u> <u>Dorbest Ltd. v. United States</u>, 30 CIT 1671, 1675-76, 462 F. Supp. 2d 1262, 1269-70 (2006) (providing a comprehensive explanation of the standard of review in the non-market economy context). Often described as "such relevant evidence as a reasonable mind might accept as adequate to support [the agency's] conclusion," <u>Consol. Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938), "substantial evidence" is best understood as a word formula connoting reasonableness review. 3 Charles H. Koch, Jr., <u>Administrative Law and Practice</u> § 10.3[1] (2d. ed. 2008). When addressing a substantial evidence issue raised by a party, the court analyzes whether the challenged agency action "was reasonable given the circumstances presented by the whole record." Edward D. Re., Bernard J. Babb, and Susan M. Koplin, 8 <u>West's Fed. Forms</u>, <u>National Courts</u> § 13342 (2d ed. 2009).

### III. Discussion

To value Vinh Quang's unprocessed fish waste as a factor of production, Commerce used the only surrogate values on the record for unprocessed fish waste. Decision Memorandum at 7-8. Vinh Quang argues that the values Commerce selected were unreliable and unrepresentative, and that Commerce cannot use price quotes when there are other values on the record that are publicly available. Mem. in Support of Pl's Mot. J. Agency R. 4 ("Pl. Br."). Vinh Quang also asserts that the information upon which it relies is the "best available." Pl. Br. 4. Vinh Quang further alleges that

"Commerce unreasonably departed from both its practice and . . . regulations that require the use of surrogate data that are publicly available." Pl. Br. 9.

In an antidumping proceeding Commerce is required to determine whether subject merchandise is being, or is likely to be, sold at less than fair value in the United States by comparing the export price, that is, the price of the goods sold in the United States, and the normal value of the merchandise. Under Commerce's non-market economy methodology for determining normal value (the price of foreign like merchandise), Commerce determines a surrogate value for each input used in producing subject merchandise. 19 U.S.C. § 1677b(c)(1).

The process of constructing a foreign market value for merchandise produced and/or exported from a non-market economy is necessarily imprecise. Sigma Corp. v. United States, 117 F.3d 1401, 1407 (Fed. Cir. 1997). Thus, the statute directs Commerce to use the best available information as a surrogate value. 19 U.S.C. § 1677b(c)(1) ("Except as provided [elsewhere], the valuation of the factors of production shall be based on the best available information regarding the values of such factors in a market economy country or countries considered to be appropriate by the administering authority.").

In evaluating whether a value is the best available information, Commerce, in accordance with its normal practice, evaluates data on the record for reliability, availability, quality, specificity, and contemporaneity. See Magnesium Metal from the People's Republic of China, 69 Fed. Reg. 59,187, 59,195 (Dep't of Commerce

Oct. 4, 2004) (preliminary determination). Commerce also will normally use publically available information when available. 19 C.F.R. § 351.408(c)(1) (2008).

Vinh Quang reported that it sold unprocessed fish waste generated in the production of the subject merchandise. Pl. July 2007 Supp. Resp. at 16. The only unprocessed fish waste surrogate value information on the record is the price quotes submitted by Catfish Farmers. Decision Memorandum at 8. Commerce determined that, in addition to being specific to the factor in question, the Indian price quotes were from one of the potential surrogate countries; were from a producer of comparable merchandise; were publically available; identified the terms of delivery and payment; and identified the offeror and offeree. Id. In analyzing Vinh Quang's suggested fish waste surrogate values, Commerce stated:

> Because the reported fish waste is an unprocessed product, [Commerce] finds that it would not be appropriate to value fish waste using an average that includes Bangladeshi import data of HTS 2301.20, "Flours, meals, and pellets, of meal or meal offal of fish", and Indonesian import data of HTS 0304.90.90, "Other fish meat of marine fish." Specifically, in the 2nd Review Results, [Commerce] found that the Explanatory Notes to the HTS, as published by the World Customs Organization, state that articles classified under HTS 2301.20 are value-added products that go through additional processing, such as "steam-heated and pressed or treated with solvent." See 2nd Review Final Results, [73 Fed. Reg. 13,242] at [cmt.] 8A . . . . Because the articles covered by HTS 2301.20 undergo further processing, it would not be appropriate to value [Vinh Quang's] reported fish waste using import data for a higher valued processed product. Additionally, because [Commerce] is valuing broken meat using HTS 0304.90.90, it would not be appropriate to value [Vinh Quang's] reported unprocessed fish waste with a surrogate value that is more specific to a value-added product, such as broken meat.

Id. at 7-8 (additional citations omitted).

Vinh Quang argues that Commerce cannot use a price quote for valuing a factor of production when there are other surrogate values that better fit Commerce's criteria for surrogate values, and asserts that the Indonesian and Bangladeshi prices for broken meat and fish skin were more appropriate surrogate values for fish waste. Pl. Br. 4. The central deficiency with this argument is Vinh Quang's assumption that its proposed processed fish waste values are a satisfactory match for unprocessed fish waste. With that assumption Vinh Quang never comes to terms with Commerce's finding that Vinh Quang's alternative processed fish waste data were an inappropriate match for the <u>unprocessed</u> fish waste factor.

The finding that the alternative values were for processed rather than unprocessed fish waste was critical to Commerce's decision. Commerce determined as a factual matter that Vinh Quang's suggested values for fish skin and broken meat did not match the factor reported. Vinh Quang does not challenge that threshold finding. Rather, it assumes, but does not demonstrate, that Commerce erred in concluding that there was no match between Vinh Quang's suggested values and the factor of production at issue. In the absence of a match, Vinh Quang has no basis to claim that Commerce erred in concluding that the values Commerce ultimately selected constituted the best available information on the record.

Vinh Quang also suggests that values derived from data for fish waste imports into Indonesia under HTS subheading 0304.90.100 demonstrate that Commerce's valuation was unreasonable. Pl. Br. 12-13. Vinh Quang failed to raise that argument at the administrative level, and thereby failed to properly exhaust its administrative

Court No. 08-00233                                                                                          Page 9

remedies. When reviewing Commerce's antidumping determinations, the Court of International Trade requires litigants to exhaust administrative remedies "where appropriate." 28 U.S.C. § 2637(d). "This form of non-jurisdictional exhaustion is generally appropriate in the antidumping context because it allows the agency to apply its expertise, rectify administrative mistakes, and compile a record adequate for judicial review—advancing the twin purposes of protecting administrative agency authority and promoting judicial efficiency." Carpenter Tech. Corp. v. United States, 30 CIT 1373, 1374-75, 452 F. Supp. 2d 1344, 1346 (2006) (citing Woodford v. Ngo, 548 U.S. 81, 89 (2006)). By failing to raise the argument regarding HTS subheading 0304.90.100 at the administrative level, Vinh Quang deprived Commerce of the opportunity to address that subheading and make a "determination, finding, or conclusion." 19 U.S.C. § 1516a(b)(1). As a result, Commerce did not have the opportunity to "apply its expertise," potentially "rectify administrative mistakes," or "compile a record adequate for judicial review." Carpenter, 30 CIT at 1374-75, 452 F. Supp. 2d at 1346. Therefore, the court will not consider Vinh Quang's arguments regarding HTS subheading 0304.90.100.

Turning to Vinh Quang's other arguments, the court notes that Vinh Quang correctly states that Commerce prefers to use publicly available, contemporaneous, tax and duty free values that are representative of the market, specific to the factor of production in question, and from the approved surrogate country. Pl. Br. 5. The degree to which those standards can be met, however, necessarily varies with each case and with the value for each factor of production.

Vinh Quang argues that a price quote never meets these standards and cannot be used because price quotes are inherently flawed and unreliable privately sourced data. Pl. Br. 5. Defendant freely acknowledges, as it did in the administrative proceeding, that price quotes are not preferred. Decision Memorandum at 8. When there are no better alternatives, however, Commerce may use price quotes. In fact, the same price quotes at issue here were used to value fish waste in the second administrative review. Certain Frozen Fish Fillets from the Socialist Republic of Vietnam, 72 Fed. Reg. 13,242 at Cmt. 8A (Dep't of Commerce Mar. 21, 2007) (final results admin. review). Accordingly, price quotes may reasonably be the best available information on the record for surrogate valuation purposes.

Vinh Quang further argues that when a live fish is processed into fillets, two-thirds of the output is fish waste. Pl. Br. 12. The administrative record, however, does not demonstrate that such waste has a high value. The Indian price quotes are the only record information regarding unprocessed fish waste values. No record data indicates that those price quotes are inaccurate. Vinh Quang had the same opportunities to place information on the record as Catfish Farmers, yet chose to submit processed, rather than unprocessed, fish waste values. See Thai I-Mei Frozen Foods Co.v.United States, 31 CIT ___, ___, 477 F. Supp. 2d 1332, 1351 (2007) ("[T]he burden of creating an adequate record rests with respondents and not with Commerce.") (quoting Tianjin Mach. Imp. & Exp. Corp. v. United States, 16 CIT 931, 936, 806 F. Supp. 1008, 1015 (1992)).

Court No. 08-00233																														Page 11

Vinh Quang also argues that the price quotes used by Commerce are unreliable and unrepresentative. Pl. Br. 11-14. It claims that the fish waste value selected by Commerce was only a small fraction of the value of the whole fish, and argues that this "simply is not reasonable." Pl. Br. 12. Again, though, Commerce had to choose among the available data on the record. Here, Vinh Quang assumed that its processed fish waste valuation would be accepted in lieu of unprocessed values. What may have been an unreasonable determination on another administrative record with more data for unprocessed fish waste is nevertheless a reasonable determination on this administrative record.

Similarly, Vinh Quang compares values taken from the databases that it advocates, and argues that those values are significantly different than the values selected by Commerce. But the values advocated by Vinh Quang are not for unprocessed fish waste. Although Vinh Quang assumes that the processed fish waste values are equivalent to unprocessed fish waste values, it does not identify record evidence to support that proposition. Vinh Quang's suggested values are for products that undergo further processing. Decision Memorandum at 8. A product that requires further processing is typically more expensive than the unprocessed product. Other than Vinh Quang's unsupported statement, there is no record evidence to indicate that the value of unprocessed fish waste is anything other than that indicated by the Indian price quotes in the record.

Finally, Vinh Quang's argument that "Commerce unreasonably departed from both its practice and from its regulations that require the use of surrogate data that are

Court No. 08-00233                                                                                          Page 12

publicly available," is not persuasive.  Pl. Br. 9.  Vinh Quang's contention that Commerce's practice and regulations unconditionally <u>require</u> Commerce to use publicly available surrogate data is contradicted by Vinh Quang's own brief, which acknowledges that the regulation at issue provides that Commerce <u>normally</u> will use publicly available information.  Pl. Br. 4 ("The Secretary normally will use publicly available information to value factors.") (quoting 19 C.F.R. § 351.408(c)(1)).  Although Vinh Quang asserts that "there were other sources of 'usable, reliable information' in the form of fish waste import data from Bangladesh and from Indonesia," Pl. Br. 7, that assertion assumes the other data was comparable to, and representative of, unprocessed fish waste.  Commerce reasonably found that such data was not comparable to the unprocessed fish waste at issue.   In sum, Commerce's selection of the Indian price quotes for unprocessed fish waste as the best available information for valuing Vinh Quang's unprocessed fish waste factor is supported by substantial evidence on the record.

## Conclusion

The court denies Plaintiff's motion for judgment on the agency record and will enter judgment in favor of Defendant sustaining Commerce's <u>Final Results</u>.

                                                               /s/ Leo M. Gordon
                                                          Judge Leo M. Gordon

Dated: September 14, 2009
       New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| VINH QUANG FISHERIES CORPORATION,<br><br>                              Plaintiff,<br><br>            v.<br><br>UNITED STATES,<br><br>                              Defendant. | Before: Leo M. Gordon, Judge<br><br>Court No. 08-00233 |

**JUDGMENT**

This case having been submitted for decision, and the court, after due deliberation, having rendered an opinion; now in conformity with this opinion, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the agency record is denied; and it is further

**ORDERED** that judgment is entered for Defendant.

                                                                                    /s/ Leo M. Gordon     
                                                                             Judge Leo M. Gordon

Dated: September 14, 2009
        New York, New York

## NOTICE OF ENTRY AND SERVICE

      This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

      Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

      Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

      Tina Potuto Kimble
      Clerk of the Court

Date: _____   By: _____
                                                                        Deputy Clerk